May it please the Court, I'm David Dowd representing Jerry Hartfield, and in our view this case turns on three fundamental essential facts. The first is that the Sixth Amendment violation that underlies everything that has happened in this case over the past three plus decades is the most egregious Sixth Amendment violation that we have seen in the history of the United States criminal justice system. The second is that the state has had numerous attempts over the last three plus decades in order to correct this error. There have been at least nine different legal proceedings that have been filed in at least six different state fora, and in none of those occasions has the state taken advantage of the opportunity to address or remedy the Sixth Amendment violation. In addition, Mr. Hartfield came up for parole at least 15 times during the 30 plus years that he was being incarcerated despite the absence of a valid conviction, and on every one of those occasions the district attorney that was responsible for the prosecution was notified of the existence of that proceeding and yet did nothing to remediate the situation. Finally, third, there has been nearly continuous bad faith on the part of the state over the past three plus decades that this case has been bouncing around the various courts. It began when the district court clerk sent a postcard to the Texas Court of Criminal Appeals indicating that its mandate to give Mr. Hartfield a new trial had been carried out, and it has continued all the way through the briefing in this court. In July of this year, the Attorney General filed a brief in this court suggesting the possibility that the murder weapon in this case might still be found, when in fact a year and a half before that, in December of 2013, at a hearing in the state court concerning the Sixth Amendment claim, the district attorney acknowledged on the record that the murder weapon had been lost. Now in the Attorney General's defense, there may well be some legitimate reason for doubting the reliability of what the district attorney said, because in the same proceeding where the district attorney said that the murder weapon had been lost, the district attorney also said that no other evidence had been lost, and in fact as we learned at the trial that took place this past summer, that representation was also false. There had been a single piece of evidence at the original 1977-78 trial that connected Mr. Hartfield not to the murder, but to the crime, and that piece of evidence was a fingerprint that presumably belonged to Mr. Hartfield that was left on a bloodied portion of a Dr. Pepper bottle that was found at the scene of the crime. The Dr. Pepper bottle was not the murder weapon, but there was victim's blood on that fragment of bottle. It turns out that that statement at the 1977 proceeding was false, and it also turns out that the evidence that had Mr. Hartfield's fingerprint on it, presumably connecting him to this Dr. Pepper bottle, disappeared by the time we got to the trial in August of this year. So what we have in this case is a man who spent more than three decades in the custody of the Texas Department of Criminal Justice, despite the absence of a valid conviction or sentence. What we have are numerous efforts on the part of that individual to call his plight to the attention of various state courts, and what we finally have is the state going forward with a prosecution, despite the fact that it lost the murder weapon, despite the fact that at least two witnesses had died between the time of the original trial and the most recent trial, and despite the fact that a third witness whose testimony was essential to the original trial, although apparently still alive . . . All right, let me, just to get you off the nut, you're going to run out of time. I mean, this started in 1977. We kind of got the 30 years of all this transpired. Why don't you fast forward, you know, and hone in on sort of where we are in terms of the district court's circumstances, does 2254 apply, because otherwise you're going to get down to the end and we not get to the key meaty pieces. I'll do that, Judge Stewart. This case was filed in federal district court after bouncing around the state court system. It was originally filed in federal district court in 2007 as a 2254 proceeding. The district court judge recognized, or at least suspected at that point, that Mr. Hartfield was not under a valid sentence or conviction, and that therefore 2254 didn't apply. And the district court judge, as this court has indicated, is permissible in a variety of contexts, including United States against Melina Solorio, which two of the judges on the current panel were present for. It is perfectly permissible to transform a petition that is filed under 2254 into a 2241 proceeding once the district judge realizes that there's not a valid conviction or sentence. However, once the district court judge did that, the district court judge also recognized that he didn't have venue over the action because there's a different venue provision that is applicable, and so he transferred it to the appropriate court. That judge, Judge Snyder, believed that the issue had not been exhausted, although in our view it had been exhausted. And at that point in 2008, counsel was appointed to represent Mr. Hartfield. It was the first time in all of these years that counsel was appointed. On all of the previous occasions when Mr. Hartfield was filing something in the state court, those documents were prepared by jailhouse lawyers. The record reflects that Mr. Hartfield has an IQ that is somewhere between 51 and 58. The district court judge ultimately concluded that the issue was not exhausted, and then that decision was appealed to the Fifth Circuit. The Fifth Circuit was confused as to whether there was a valid conviction or sentence. This is in 2012, and it was a different panel of this court. And that panel in 2012 certified the question to the Texas Court of Criminal Appeals and said to the Texas Court of Criminal Appeals, it looked like you all issued a mandate in 1983 directing that Mr. Hartfield receive a new trial, and it appears as though that was, is there a legitimate conviction or sentence operating here? The Texas Court of Criminal Appeals answered that question in June of 2013 and said, no, there isn't. And in that same opinion in which the Texas Court of Criminal Appeals said there's no valid conviction or sentence, it identified two state procedural mechanisms that would be available for Mr. Hartfield in order to challenge the speedy trial delay in bringing him to trial again. Mr. Hartfield then, represented by current counsel, eight days after the Texas Court of Criminal Appeals said that one of those options is to file a pretrial state habeas corpus writ, eight days after the Texas Court of Criminal Appeals. Counsel, could I just jump you directly to their 28-J letter, the two cases they cite? Yes. Because the elephant in the room that occurs after the briefing, I think, is the conviction. Right. And therefore, they cite, they cite, forget the background, just the Tenth Circuit Yellow Bear case, the Eleventh Circuit Medbury case. Would you ask us to create a split with them, or do you think they don't control? I think, I think certainly Yellow Bear doesn't control. I don't think that it's been followed anywhere. I think that there are... But so therefore, you think it's erroneous. The interaction between 2254 and 2241, its description of how those two interact is error. I think that the, that the law in this circuit is that the date of filing controls. That's law that applies to this, or is to diversity? That's the law that applies, in our view, to this case. Okay, what's your authority for that? The date of filing controls. We cited one, we, we, we cited a case from outside, I believe from the Third Circuit. No, but you just said the law in this circuit. Right. Is the date of filing controls. Correct. What's your authority? The reason, the reason that I believe that the date of filing controls is because this is the case in Solario, that the relevant remedy for a Sixth Amendment violation is dismissal of the indictment. Dismissal of the indictment. And so what it means to dismiss the indictment is that when the Sixth Amendment issue is being litigated, it is being litigated as if the trial has not occurred. And what that means is that even when you have a valid conviction, and you therefore have to raise the issue in a 2254 proceeding, insofar as numerous cases from the circuit that say that the only remedy for a Sixth Amendment violation is dismissal of the indictment. Well, that's back to Barker versus Wingo. Supreme Court really wrestled with what's the possible relief here. But, but the predicament that you're in, which is not you're doing, but your client was convicted. And so I read Supreme Court law in McDonald to say, now you've teed up, it's perfect. You've got the trial to be able to show just how harmful that delay of time was. Delay of time per se doesn't reach a speedy trial act violation, but instead you've got the trial record to be able to make your argument. I think that we, Judge Higginson, I think that we could make that argument. And you will, right? I, I believe that we made that argument prior to the trial. I, I know you say that you did, but now he's been convicted. And the real question I see is just one of posture. Would we intercede, interrupt your direct appeal from the conviction to decide that issue? Or do we let you prove it with benefit of full trial record? Judge Higginson, the state courts have had, as I indicated earlier, nine different opportunities since 2005 to address this issue. Nine different opportunities. But never with the trial record to establish what the prejudice to you was. That's correct, Judge. But under the Barker v. Wingo analysis, when you get to the fourth prong and you examine prejudice, that is typically done prior to the trial. The prejudice analysis is conducted prior to the trial. We would be willing, and in fact quite happy, for this panel to address the prejudice question without even looking at the trial, with simply looking at what the evidence on the eve of trial or at the time of our briefing was, which was that the murder weapon was lost, and that critical witnesses were dead, and that more than 30 years had elapsed, and that the state had had the opportunity to bring this case to trial numerous instances over the preceding 30 years. This court doesn't even have to look at what happened in August in order to find out. You must know this case backwards and forwards. When you say the weapon was lost, it was a Coke bottle, right? Wasn't it a Coke bottle? No. The murder weapon was a pickaxe. There was a bloody Coke bottle that was found at the scene that was not the murder weapon. Where were your client's fingerprints if you accept the original trial proof? If you accept the original trial, our client's fingerprints were on a piece of a Dr. Pepper bottle that was found at the scene of the murder crime that was not the murder weapon. And was her blood on that bottle? Her blood was on a different portion of the fragment from that bottle. So there was no piece of the Dr. Pepper bottle that included the victim's blood. And then there was substantial testimony that his statement is the only thing that connected the police to her vehicle? Is that fair to say? The only thing that connected him to her vehicle was testimony from a police officer who has died since the original trial, who was not cross-examined at the original trial, whose testimony from the original trial was read into the record this time. That's the only evidence that connects him to the vehicle. I'm not clear why it is that you don't want to go back and start this case the way you would normally when you have a conviction. Start through the state system. I mean, there's a 2254 problem. We have a 2254 problem. You may not agree with Yellow Bear, but I'm sort of taken with it. And we've got a problem. We. So let me then say, Judge King, why I think with—let me postpone the question of why we don't want to go back and first tell you why, even if you're taken by Yellow Bear, I don't think there's a Yellow Bear problem. What 2254 does, as the government acknowledges in its briefing, is to narrow the circumstances under which a habeas petitioner can prevail. So what 2254 does is it simply places limitations on the ability of a habeas applicant to gain relief in the presence of a constitutional violation. We are perfectly happy for this panel to look at 2254 for purposes of deciding whether relief is available to Mr. Hartfield and to apply 2254's limitations on the availability of relief. I want to say that under 2254, you have to have exhausted—and we're not sure you would have exhausted—I would encourage the Court to look at 2254b2b, where one excuse for exhaustion is that the state court has had numerous opportunities over the years in order to address the—in order to address the violation. There's a case called—it's an old Fifth Circuit case called Brazil against somebody. I don't remember that this Court has expressly held survives AEDPA, so that if the state takes too long in order to address a constitutional violation, then exhaustion is excused, not under 2241, but under 2254. So this Court— Part of the problem is none of this has been briefed to us, right? And it wasn't even the Certificate of Appealability. We're looking—we were—and no fault to you, but we were looking at a special circumstances case. I think that's right, Judge Higginson, and this is a special circumstances case. And what Dickerson does not exclude the possibility of is that the Sixth Amendment violation can be so egregious— Was there a state conviction in Dickerson? I don't think so. No, there's not a state conviction in Dickerson. So that's the 24—2254 problem that we're wrestling with. I think that 2254 places substantive limits on the ability of this panel to grant relief. Yes. And that those substantive limits are met in this case. The substantive limits are met in this case. The state courts had an opportunity to address the Sixth Amendment issue. They didn't. What that means for 2254 purposes—not 41 purposes, 54 purposes—is that this Court's review of the Sixth Amendment issue is de novo. But, you know, we have a COA process, all this stuff. And that issue is embedded in the COA, Judge King. The COA is issued with respect to are there special circumstances, and it is clear that special circumstances can be satisfied by bad-faith prosecutions. Oh, Lord. Well, you know, it says I sort of foresaw—everybody's entitled to use the time you want to, but the bulk of the time we've spent on the procedural history, et cetera, et cetera, when in fact what we have is the COA. And that's addressed at the red light. So I suggest when you come back on rebuttal, you spend some time on the matter which really is before us, and that's the COA grant. Otherwise, you know, we'll deal with the brief. It's not that the other isn't interesting, but, you know, that's what's in front of us, and that's what we're ultimately going to deal with. You reserve some rebuttal time and use it as you see fit. That's just a, you know, suggestion. At any event, we'll hear from Mr. Barker. All right, let's cut to the chase, Mr. Barker. We've got the stage set in terms of all of this, but let's at least start off with what's in front of us and what's your take on us as to what the controlling case law is? Yes, Judge Stewart. And let me start with that. This is, I think as members of the panel have recognized, this is a very narrow appeal. The issue certified by appeal by the District Court was whether the special circumstances test under Dickerson is met. That test concerns habeas relief that is issued pre-conviction, not after a conviction. That is the only issue within this Court's appellate jurisdiction in this appeal. However, Hartfield has now been convicted. As a result, the only issue within this Court's appellate jurisdiction no longer has consequence in this federal habeas action. And so I want to be clear that we believe the best result, the right result, is dismissal of this appeal for appellate mootness. And if I can pause and just give a word about our supplemental brief addressing this, I want to hopefully clear up some potential confusion there. At pages 4, 3, through 5 of that brief, we explain the point I just made, that the issue within this Court's appellate jurisdiction is no longer of consequence. At page 3 of our merits brief, we also explain that we anticipated this could happen and explain that dismissal for mootness might be proper. Some confusion might result because pages 12 and onward of our supplemental brief discuss the Yellow Bear result and discuss the possibility of a remand to the District Court. And there's some tension in the idea that an appeal could be moot and that a court could remand, and I apologize for that. I want to be clear that our position is this appeal is moot. The possibility of a remand with instructions as in Yellow Bear is only in the alternative. If for some reason the appeal is not moot, but we have not found any authority suggesting this appeal is not moot, we think that dismissal is the appropriate course here. But regardless of what specific decree this Court issues, whether it's dismissal of the appeal or a remand as in Yellow Bear, however Mr. Hartfield wants to raise in a federal habeas action his speedy trial dismissal claim, he must first exhaust it in state courts. And he has started that process in the state criminal proceeding. He filed a motion to dismiss the indictment presenting his speedy trial claim, and that was adjudicated on the merits. And that merits adjudication, it did survive the 2013 13th Court opinion. And now that he has been convicted and he is appealing on direct appeal, he has the opportunity to present the merits of that claim to the state intermediate court of appeals. And then beyond that, he has the ability to seek a petition for discretionary review in higher appellate courts. But before he does that, but before he does that... He hasn't, your supplemental brief wasn't responded to, it was in a 28-J context, so that's again not his fault. But I think one answer would be that 2254 by its plain language does say cannot grant unless, but then it lists a couple of exceptions, right? And wouldn't the constellation of factors he's just indicated meet those exceptions? Well, let me list them in 30 years where the state doesn't dispute now that he would never had a valid conviction. State ordered to retry never retries, doesn't get counsel I don't know for how many years, and has an intellectual disability. Wouldn't those meet the 2254B1 exceptions? My answer is no. I have specific responses to many of the points he raised. Before I present those, if I may just qualify this by noting, however, that the Certificate of Appeal delimits this court's jurisdiction to the special circumstances test, and the district court below never passed on the application. So this is your remand option? If you let the district court assess whether B1 exceptions exist? Correct. If this court were to conclude that this appeal is not moot, and that it would not be appropriate to remand, the district court should be allowed to pass on that in the first instance. But if I can then turn to the arguments we would expect to present were that issue ever litigated, a lot of those go to the merits of his Sixth Amendment claim. So let me start with he mentioned intellectual disability. No court has ever found that. That was his contention, and he put some evidence in, but there's no court finding ever on that. In fact, Mr. Hartfield was represented by counsel. The state trial court who's ruling on the motion to dismiss the indictment is now on appeal, entered a finding that Mr. Hartfield was represented by counsel at all relevant times by Mr. Scardino, his state court criminal lawyer from the 1970s trial, continued to represent him. And in fact, there was testimony at the state court hearing on the motion to dismiss the indictment by Mr. Scardino, who said that in his view, he believed, the state did not have this belief, but he And for that reason, the state trial court made a finding that Hartfield's failure to request a speedy retrial was strategic, because a retrial presented the possibility of a death penalty, and the governor's commutation gave him life imprisonment. So Mr. Hartfield's claim of intellectual disability is disputed, and there's no finding on that, which would be yet another reason, if it's ever relevant, to let the district court pass on this. The only finding on his representation by counsel in the state system is that he was represented by counsel, and then of course he was represented in federal courts by counsel when in 2008, counsel was appointed for him, the Federal Public Defender's Office was appointed in his federal habeas litigation. He argues, so we believe that addresses the period of delay at least through 2006, and then the state courts also looked at the period of delay from 2006 until the present day, and I have a couple of points on that. But the first one I want to note is that this court already addressed that issue. So in 2007, Hartfield filed his first federal habeas petition, and he argued there that the special circumstances exception to exhaustion was met. He argued that in the federal district court proceedings, and Judge Schneider rejected that and dismissed that first federal habeas petition for failure to exhaust state procedures. Judge Schneider even explained in his 2011 opinion that the appropriate course to present this speedy trial dismissal claim is a motion to dismiss filed in the state criminal proceeding, followed by potential appeal after any conviction in that proceeding. This court then affirmed the district court's dismissal of the habeas petition without prejudice for failure to exhaust. So this court has already, and I suppose it's not precedent because it was an unpublished opinion, this court's 2013 opinion, but at least that should be considered law. The case has already determined that this special circumstances argument about the time at least until this court ruled in 2013 is not meritorious and is not persuasive. So now let's look at the last period from 2013 until today, what's happened since then. This court in 2013, upon answer of the certified question by the CCA, affirmed the dismissal of the first habeas petition for failure to exhaust. He filed a habeas petition there and he also filed his motion to dismiss the indictment. The second one was the proper procedure. And from that point on, Hartfield has never requested a trial. In fact, it was Hartfield who moved to delay his state court trial by almost a year. It was originally set for September of 2014, and he obtained a stay of that trial. The state has moved expeditiously since that time to bring him to trial and has now tried him. So I believe I've hit all of the points that Mr. Hartfield suggests were special circumstances. A lot of those are bound up with the merits of his speedy trial claim itself. A lot of those touch on potential factors under the Barker v. Wingo. As I mentioned, those had never been adjudicated federally. The only merits adjudication of those was in the state trial court, and now the state appellate court is reviewing that. So no, my answer is no. We disagree with a number of the assertions Mr. Dowell has made. His characterization, he also characterizes the 2013 Court of Criminal Appeals opinion in a way that we vehemently disagree with, he suggests. Do the parties agree as to the first point? Does the record have common agreement as to when the state knew that the commutation wasn't valid? No. That's a disputed point? It is a disputed point. The state litigated that issue starting with the 2007 federal habeas petition. But at this point, the state doesn't dispute that the commutation couldn't have existed because there was, is that correct? We cannot dispute that because the CCA... Right. So when is it, in your opinion, that the state conceded that point? That they knew there was no valid conviction? I don't think we, I would not characterize it as conceding it. We're recognizing... Recognize it. The 2013 Texas Court of Criminal Appeals opinion so held. All right. We, you know, we disagree with that. And in fact, if, if your question is asking about the state's good faith, which is of course a merits factor, I think... Well, that's an indispensable, if we were looking at the Speedy Trial Act, if we were to reach it through 2241 or however, that would be the core inquiry, correct? Bad faith is the essence. No, I, I disagree. I, I think although that of course is one factor, um, the state district court, uh, state trial court who heard our claim found, it found negligence and we even... Right. ...agree with that. But it found no bad faith. I know, but if there were bad faith, that's, that's the, a very significant factor under Barker. I want, I don't deny that it's a factor, but I think the significance is also due to the fact, the question of whether Hartfield failed, took any in, inaction or action in failing to present this claim. Whether it was a strategic choice by him, represented by counsel at all relevant times. But, and again, I don't think the merits are before this court. That is far outside of the procedural question and the certificate of appealability. Um, I do have a sort of factual response on bad faith, but let me also qualify that by saying that the bad faith as it's been used in the special circumstances test, um, has really been used to describe a prosecution brought without a reasonable expectation of obtaining a valid conviction. That's Kogler versus Helfand. Hartfield cites that at page 26 of his brief. He then more, he then just, he cites it, but then he then ignores it and takes the word bad faith completely out of that context and is using it to suggest sort of, um, bad faith. Yeah, but he's not saying malicious prosecution. He's saying as of 2013, the state of Texas should have immediately released him. He's not, he's being falsely imprisoned or immediately tried him. And I guess your response is the record would reflect that once the court of criminal appeals stated that he, there was no valid conviction, what was the basis to keep him in prison at that point? He was indicted for murdering. So, so there'd been a separate bond on the superseding indictment at that point? Another really, a bail decision had been made? I believe the basis for holding him at that point was the original indictment. I don't believe he challenged the sufficiency of that, of the murder charge to keep him in jail. So I'm not familiar with, um, the specifics of that because there was no challenge to that. So he had two claims in his original federal habeas petition. He had his 14th amendment claim. There is no judgment of conviction, but you're holding me as if I am. Right. State disputed that. Ultimately the state lost. Lost in 2013. And he had a sixth amendment claim. Okay. Um, the fourth, in 2013, the court of criminal appeals resolved on certification what was essentially the core of his 14th amendment. Yes. And at that point, the state brought him to trial expeditiously. As I said, we got that on the original indictment, on the original murder indictment. So we got that opinion in 2013. We proceeded to try to get him to trial. He, in fact, sought to stay that because he didn't want to go to trial. He wanted dismissal. And ultimately he was tried in 2015 and again convicted of murder. So, um, I do just want to address the point, though, that, um, Mr. Dow's characterization of the CCA's opinion, if you look at the 13th court of appeals opinion, the state intermediate appellate court's opinion, it addresses this far more into the CCA opinion than it supports. The CCA there was addressing all of the procedures available to have presented all of Mr. Hartfield's claims, which included, yes, a sixth amendment claim, but also a 14th amendment claim. And all the CCA was saying, and if you look at this, the CCA opinion uses the past tense. It says that, um, Mr. Hartfield, quote, could have filed an article 11.08 pre-conviction petition. And if you look earlier, the CCA's opinion at page 237 in the Southwest Reporter, the CCA there expressly notes that there were two claims that Mr. Hartfield had presented at that point, both the sixth amendment claim and the 14th amendment claim. And that's why, when this issue was raised in the state intermediate court, the 13th court got it right and explained that the CCA's language is, quote, narrower than Hartfield contends. So he is, Mr. Hartfield was instructed in that opinion on the avenue to present in state court the merits of a sixth amendment claim. That was to file a motion to dismiss the indictment in the state court criminal case. And he did that. He got a merits adjudication on that, and he's entitled to have that reviewed on direct appeal from his judgment of conviction. And the notice of appeal and briefing's already been set? I don't know that, I don't, I believe it has not been briefed. I did see that the appeal had been docketed from the criminal conviction. Has there been a motion to expedite it? I'm not from, I don't believe I saw that on the docket. Yeah. Perhaps Mr. Hartfield could speak to that better than I can. So, in conclusion, even if this appeal were not moot, there is just no basis for excusing the exhaustion requirement here. But we believe the correct outcome is not affirmance, is not remand, but is simply dismissal of this appeal as moot, because the only question presented here is no longer of consequence. That would allow Mr. Hartfield to then exhaust his sixth amendment dismissal claim in state court, and if he is dissatisfied with that, to come to federal court and file a federal habeas petition. All right. Thank you, Mr. Barker. I believe we have your argument. You've got rebuttal, Mr. Daff. Let me begin by addressing what I think is the issue that you encouraged me to address, Judge Stewart. The Fifth Circuit in U.S. v. Underwood held in 2010 that the issuance of a Certificate of Appealability subsumes other issues. And the issuance of the Certificate of Appealability in this case, with respect to the question of whether there are special issues that are present, subsumes the merits of the Sixth Amendment issue. How do we know that? We know that from Dickerson v. Louisiana itself, where the court says, and I'm just recognizing in Braden, however, that federal habeas is available to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction if special circumstances exist. Thus, the question is whether such circumstances exist here. The COA was issued on the question of are there special circumstances. If there are special circumstances, what follows directly from that is that the merits of the Sixth Amendment issue can be adjudicated. That raises the question, should this court find special circumstances and then send it back to the district court in order to address the merits of the Sixth Amendment issue in the first instance? I don't think so. And I just want to pause here to emphasize that Mr. Hartfield has been bouncing around the legal system for ten years, since 2005, in both state court and federal court. If this court were to send the issue back to the federal district court, and then Mr. Hartfield were to lose, or for that matter, to win, it doesn't make any difference. If he loses, he appeals to this court. If he wins, the Attorney General appeals to this court. And as this court held in U.S. v. Molina-Salario, this court's review of the merits of the Sixth Amendment decision is going to be de novo review. So that this court is going to have to conduct exactly the same analysis, whether it does it prior to the district court acting or after that district court acting. And so what we would urge this court to do is to find that special merits of the case, and then to address the merits of the case, because the de novo standard means that whatever it has to do ultimately, it can also do right now. That leaves the question, for 2254 purposes, of whether there has been exhaustion. Now our view, of course, is that the issue has been exhausted. It's been presented to the state courts time and time again, and they haven't done anything. The Attorney General says we misread the Texas Court of Criminal Appeals decision. Read it for yourselves. The CCA says you can raise a pretrial writ under Article 1108 in order to raise the Sixth Amendment claim. Judge Schneider, on pages 15 to 16, I think, or 13 to 14 of our brief, Judge Schneider's original order where he says, go exhaust, Judge Schneider reads the Texas Code of Criminal Procedure, and he says, you can raise this issue in an 1108 pretrial writ of habeas corpus in state court. So if the Texas Court of Criminal Appeals somehow got their own state rules wrong when it told us to go back to state court with an 1108 petition, Judge Schneider made exactly the same mistake in his order when he told us to go back to state court with an 1108 petition, and that's exactly what we did. If this court were to conclude that nevertheless, that nevertheless, we haven't exhausted, then I would encourage the court to find that exhaustion is excused. And in Brazil against Bradley, the case that I referred to earlier, this court held federal habeas petitioners are excused from exhaustion if the state unreasonably delays acting on his efforts to invoke state remedies. The state of Texas has been unreasonably hesitating to grant Mr. Hartfield any remedy under the Sixth Amendment for, conservatively speaking, ten years, and much longer if we include the knowledge that the district attorney had of each one of these occasions on which Mr. Hartfield was coming up for parole. It is true that Brazil against Bradley is a pre-EDPA case, and to the extent that members of the panel are concerned by that, this Fifth Circuit has held in both Williams against Stevens a 2015 decision, and Henderson against Stevens also from 2015, that the rule of Brazil against Bradley, namely that exhaustion is excused when the state unreasonably delays, is still good law even in the post-EDPA world. I would strongly encourage this court to stop this case from bouncing around the system like the pinball that it's been bouncing around like for the last three decades, recognize that there was an egregious Sixth Amendment violation in this case, unlike any Sixth Amendment issue in the history of this country. This court has decided 211 cases, citing Barker against Wingo. I did some back-of-the-envelope math. The average length of time that the case is between two and three years. In this case, it's been 30 years. Enough is enough. All right. Thank you. Now, Mr. Barker, thank you both for your briefing and oral argument. The case will be submitted.